**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | |
|---|---|
| ALPS PROPERTY & CASUALTY INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> JEREMY COHEN, et al., <br><br> Defendants. | \* <br> \* <br> \* <br> \* <br> \*   CV 125-105 <br> \* <br> \* <br> \* <br> \* <br> \* |

**O R D E R**

Before the Court are Plaintiff ALPS Property & Casualty Insurance Co.'s ("ALPS") motion for summary judgment (Doc. 24) and Defendants Jeremy Cohen and Lorin Cohen's (the "Cohens") cross motion for partial summary judgment (Doc. 26).  For the following reasons, Plaintiff's motion is **GRANTED** and Defendants' motion is **DENIED**.

## I. BACKGROUND

On May 2, 2025, Plaintiff filed a complaint for declaratory judgment against Defendants to determine the Parties' rights and responsibilities under a lawyer's professional liability insurance policy.  (Doc. 1, at 1.)  This action stems from a March 2024 lawsuit (the "Xytex Lawsuit") filed by Xytex Cryo International, LTD and Xytex Ventures, LLC (collectively, "Xytex") against the Cohens, and others, in the Superior Court of Columbia County,

Georgia. (Doc. 27-1, at 7.) The Xytex Lawsuit makes several allegations involving the Cohens, particularly that between December 2022 and March 2024, Lorin Cohen, an employee of Xytex, forwarded emails and documents to Jeremy Cohen's email address approximately twenty-two times. (Id. at 1-2.) The Xytex Lawsuit complaint asserts Jeremy Cohen "is an attorney at law who provided limited legal services to [Xytex] and/or [its] affiliated entities," and that he received the forwarded emails and documents. (Id. at 2.) Further, "as an attorney licensed in Georgia," Jeremy Cohen "knew or should have known about the legal prohibitions against the possession, conversion, and use of corporate trade secrets, corporate confidential information, including attorney-client privileged communications." (Id.) Jeremy "[knew] he ha[d] no right to receive, access, possess or use [Xytex's] trade secrets, confidential information, and attorney-client privileged information," and "knew it was wrongful to aid and abet his wife and [another defendant] in violating the Restrictive Covenants" in their employment contracts. (Id.) Lastly, Xytex alleges the Cohens "recruited [another defendant] to use his IT computer access and expertise to steal and convert [Xytex's] confidential information and trade secrets for improper use." (Id. at 2-3.)

Plaintiff insured Jeremy Cohen's law firm, Jeremy D. Cohen, Attorney at Law, LLC, under a policy of Lawyer's Professional Liability insurance (the "ALPS Policy") effective May 3, 2023 to

2

May 3, 2024. (Id. at 3.) Days after Jeremy Cohen was sued, he tendered the Xytex Lawsuit to Plaintiff for defense and indemnity. (Id. at 8.) The ALPS Policy provides coverage for "sums . . . that the insured becomes legally obligated to pay as damages, arising from or in connection with a claim first made against the insured and first reported in writing to the company during the policy period," given the claim "arise[s] from a wrongful act." (Id. at 3.) A "wrongful act" is defined in the ALPS Policy as "an actual or alleged . . . act, error, or omission by the insured in the performance of professional services." (Id. at 4.) The definition of "professional services" is "services or activities . . . rendered solely to others as . . . an attorney in an attorney-client relationship on behalf of one or more clients applying the attorney's specialized education, knowledge, skill, labor, experience and/or training." (Id.)

In April 2024, Plaintiff informed Jeremy Cohen that it "will not provide [him] with a defense or indemnity in the matter," after it conducted its analysis. (Id. at 8.) Later, Jeremy Cohen, personally or through counsel, provided Plaintiff with "true facts" regarding his legal services for Xytex and the Xytex Lawsuit, including that he had performed broad legal services for Xytex since 2021. (Id. at 8-9.) He asserted Xytex was alleging he conspired with his wife to steal company trade secrets, but "the real issue is employees came to [him] as an attorney who

3

worked for the company and made an allegation that the CEO was committing fraud." (Id. at 9.)

On May 2, 2025, Plaintiff filed suit against Defendants seeking declaratory judgment. (Doc. 1.) The Cohens answered and asserted counterclaims against Plaintiff on June 4, 2025. (Doc. 15.) On July 24, 2025, Plaintiff moved for summary judgment on all the Cohens' claims. (Doc. 24.) The Cohens responded in opposition and filed a cross motion for summary judgment on August 14, 2025. (Doc. 26.) Plaintiff replied and the Cohens filed a sur-reply. (Docs. 27, 28, 29.) Plaintiff filed another response to the Cohens' cross motion on February 20, 2026, and the Cohens replied on March 6, 2026. (Docs. 36, 38.) Lastly, Plaintiff filed a sur-reply. (Doc. 42.) The issues have been thoroughly briefed and the motions are ripe for the Court's review.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental

4

Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant may show an absence of evidence to support the nonmovant's case or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Vaughn v. Ret. Sys. Of Ala., 856 F. App'x 787, 789 (11th Cir. 2021) (citation omitted). The non-movant must tailor its response to the method by which the movant carries its initial burden. Fitzpatrick, 2 F.3d at 1116-17. For

5

example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. at 1116.  On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17 (citations omitted).  The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).  Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007).  Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)).  Accordingly, the Court will only review the materials the Parties

6

specifically cite and legal arguments they expressly advance. <u>See</u> <u>id.</u>

In this action, the Clerk of Court provided Plaintiff and Defendants notice of the motion for summary judgment and cross motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 25, 35.) For that reason, the notice requirements of <u>Griffith v.</u> <u>Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.

### III. DISCUSSION

The Court addresses the Parties' motions below.

### A. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on Count I, seeking (1) a declaration that ALPS has no duty to defend or indemnify Jeremy Cohen in the Xytex Lawsuit, and (2) a ruling in favor of Plaintiff and against the Cohens on their counterclaims. (Doc. 24-2, at 16.) Plaintiff argues it is entitled to summary judgment because under the terms of the ALPS Policy, it is not required to defend or indemnify Jeremy Cohen because the Xytex Lawsuit "does not involve any alleged act, error, or omission by [] Jeremy Cohen in the performance of any professional legal services for [Xytex]." (Doc. 24, at 1.) Generally, Plaintiff argues there is a duty to defend a policyholder only if the underlying lawsuit's complaint

7

states a claim or suggests a potential claim that would be covered under the ALPS Policy. (Doc. 24-2, at 6.) Additionally, Plaintiff asserts that the "[i]nterpretation and application of unambiguous policy terms are matters of law for the [C]ourt." (Id. at 8.)

"A declaratory judgment action involving interpretation of an insurance policy implicates contract law." Owners Ins. v. Brinkley, No. 219-cv-107, 2020 WL 4430969, at *4 (S.D. Ga. July 31, 2020) (citing Rothell v. Cont'l Cas. Co., 402 S.E.2d 283, 284 (Ga. Ct. App. 1991)). "Because the Policy was made and delivered in Georgia, Georgia contract law applies." Id. (citing Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc., 897 F. Supp. 1472, 1475 (S.D. Ga. 1995)). "An insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others." Lofton v. State Farm Mut. Auto. Ins., 384 S.E.2d 245, 245 (Ga. Ct. App. 1989) (citation and internal quotation marks omitted). "[I]nsurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." Jenkins v. CLF Healthcare, LLC, 481 F. Supp. 3d 1313, 1319-20 (S.D. Ga. 2020) (quoting Hays v. Ga. Farm Bureau Mut. Ins., 722 S.E.2d 923, 925 (Ga. Ct. App. 2012)). "As is the case with all contracts, unambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the

8

insurer or detrimental to the insured." Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc., 466 S.E.2d 4, 6 (Ga. 1996) (citations omitted). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 418 (Ga. 2012) (citation omitted).

1. Wrongful Acts

Plaintiff argues: (1) the Xytex Lawsuit does not involve any alleged act, error, or omission by Jeremy Cohen in his performance of legal services for Xytex, and the complaint does not state any legal matters he completed for Xytex, so they are not the basis for Xytex's claim against him; (2) the only "acts" alleged in the complaint are Jeremy Cohen's allegedly wrongful receipt and retention of emails and documents sent by Lorin Cohen and his assistance to Lorin Cohen in recruiting another defendant to participate in obtaining documents, neither of which are alleged to be an action taken in the context of the attorney-client relationship; and (3) courts in Georgia have found no ambiguity in the requirement that a covered claim must allege an act, error, or omission in the insured's professional services, and it is not enough that the acts in question flow from or are incidental to the professional's employment, but rather, the alleged conduct

9

must be "inextricably intertwined with" the professional services. (Doc. 24-2, at 9-13.)

The Cohens argue an insurer must defend against any complaint that might potentially or arguably fall within the policy's coverage. (Doc. 26, at 6 (citation omitted).) Consequently, they argue Xytex's complaint falls within the ALPS Policy because it identifies Jeremy Cohen as an attorney that performed legal services for Xytex such that "its claims against Mr. Cohen . . . are based on his legal services." (Id. at 9.) Further, they argue that at the very least, there is ambiguity about whether Jeremy Cohen's actions were taken in the context of his attorney-client relationship with Xytex or as part of legal services performed for Xytex, and this ambiguity favors a duty to defend. (Id. at 12.)

The issue before the Court is whether the Xytex Lawsuit alleges or potentially alleges claims against Jeremy Cohen that arise out of an "act, error, or omission" in his performance of legal services for Xytex. (Doc. 26, at 7; Doc. 27-1, at 5.) The Court finds there is insufficient evidence that it does. Given the Parties do not dispute the claims did not allege an error or omission occurred, the Court focuses its analysis on whether the

claims arise out of an act in Jeremy Cohen's performance of legal services.

The Court finds the language of the "wrongful act" portion of the ALPS Policy is unambiguous, and the Parties do not disagree. However, there is a dispute regarding the level of ambiguity of Xytex Lawsuit's complaint allegations. Plaintiff argues Xytex's claim that Jeremy Cohen wrongfully assisted his wife's taking of confidential documents is straightforward. (Doc. 27, at 5.) Further, Plaintiff argues that Xytex's absence of reference to legal matters Jeremy Cohen was retained for or any of his acts in the performance of legal services clearly shows those matters are not the basis for Xytex's claim against him. (Id.) The Cohens argue that although the complaint's claims are ambiguous, its allegations as to Jeremy Cohen's role with Xytex are not because he is identified as an attorney who provided legal services to Xytex. (Doc. 29, at 3, 9.) Because of this identification, the Cohens argue, Xytex clarifies that its claims against him are based on his legal services. (Id. at 3.) Further, the Cohens assert the complaint establishes Jeremy Cohen and Xytex had an attorney-client relationship, and that based on his role as an attorney, Jeremy Cohen "knew or should have known about the legal prohibitions against the possession, conversion, and use of corporate trade secrets, corporate confidential information,

11

including attorney-client privileged communications." (Doc. 26, at 10-11.)

"In determining what types of actions by an insured constitute the providing of professional services, [the Georgia Court of Appeals] looks to the nature of the act the insured performed, rather than the title or status of the insured." Garland, Samuel & Loeb, P.C., et al. v. Am. Safety Cas. Ins., 651 S.E.2d 177, 179 (Ga. Ct. App. 2007) (quotations and citation omitted). The language of the ALPS Policy outlines the "act" in question occurs "in the performance of professional services." (Doc. 27-1, at 4.)

The Court finds the Xytex Lawsuit contains claims that are, at most, incidental to Jeremy Cohen's performance of legal services for Xytex; thus, the claims do not arise from any acts taken in rendering professional services. Garland, 651 S.E.2d at 179, 180. It is not determinative that Xytex identified Jeremy Cohen as an attorney or detailed their attorney-client relationship because the claims brought against him do not clearly "arise from" an act in his performance of professional services for Xytex. Id. The complaint alleges Jeremy Cohen "[knew] he ha[d] no right to receive, access, possess, or use [Xytex's] trade secrets, confidential information, and attorney-client privileged information and communications" and that he also "knew it was wrongful to aid and abet his wife and others in violating Restrictive Covenants." (Doc. 24-3, at 4.) Xytex's assertion

12

that Jeremy Cohen knew he did not have access to or a right to receive certain confidential business information and attorney-client privileged information weighs against Jeremy Cohen's account of his close legal representation involvement with Xytex, given it is common for a company's retained counsel to have access to confidential business files and communications as they pertain to legal matters.

Further, the allegations involve a conspiracy to steal trade secrets in breach of Lorin Cohen's Restrictive Covenant, Jeremy Cohen's allegedly wrongful receipt of emails and documents from Lorin Cohen, and the recruitment of an IT employee to access protected files. (Doc. 1-1, at 6; Doc. 27-1, at 2-3.) None of these allegations are actions taken by Jeremy Cohen as part of his legal services performed for Xytex. Receiving confidential documents and conspiring to steal trade secrets do not involve "specialized skill or training," as required by a lawyer's work performing professional services. (Doc. 27-1, at 4.) "Where the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit." Garland, 651 S.E.2d at 179 (quotations and citation omitted). Based on the plain language of the ALPS Policy, there is no genuine dispute of material fact that the claims do not arise from any "act[s] . . . by the insured in the performance of professional

services" such that Jeremy Cohen is entitled to defense or indemnity by Plaintiff in the Xytex Lawsuit.  (Doc. 27-1, at 4.)

2. <u>True Facts</u>

Determining an insurer's duty to defend typically involves comparing the complaint allegations to the insurance policy provisions; however, "if the insurer is aware of factual contentions that would place the claim within the policy coverage, courts may consider such 'true facts' outside of the four corners of the complaint" to determine whether a duty to defend exists. <u>Capitol Specialty Ins. Corp. v. PTAV, Inc.</u>, 331 F. Supp. 3d 1329, 1334 (N.D. Ga. 2018) (quotations and citation omitted).  Then, if the complaint taken with the outside facts known to the insurer "does not assert a claim that is covered, the insurer is justified in refusing to provide the insured a defense;" however, "[a]ny doubt as to the insurer's duty to defend . . . should be resolved in favor of the insured." <u>Id.</u> (quotations and citation omitted). Importantly, an insured may not "create coverage simply by 'reinterpreting' the factual allegations made so as to come within the scope of the insurance contract." <u>Shafe v. Am. States Ins.</u>, 653 S.E.2d 870, 874 (Ga. Ct. App. 2007).

Plaintiff argues none of the Cohens' true facts bring the Xytex Lawsuit within the ALPS Policy's coverage because the allegations do not "transform Xytex's claims against [Jeremy Cohen] into claims arising from an act, error, or omission in

14

Jeremy [Cohen's] performance of any professional services for Xytex." (Doc. 24-2, at 15 (emphasis omitted).) Plaintiff also cites Elite Integrated Med., LLC v. Hiscox, Inc. to support its assertion that the policyholder must present evidence that is material to the coverage issues in its offering of true facts. (Id. at 14 (citing 553 F. Supp. 3d 1307, 1318 (N.D. Ga. 2021)).) Explaining conduct and denying wrongdoing does not bring the claims within a policy's coverage. (Id. at 14-15); see Elite Integrated Med., 553 F. Supp. 3d at 1319. Further, Plaintiff points out inconsistencies between Jeremy Cohen's answer to the Xytex Lawsuit and the true facts he gave Plaintiff when explaining the circumstances under which he received various confidential documents from Lorin Cohen. (Doc. 27, at 7.) Jeremy Cohen's explanations do not "intimate that Xytex's complaint in fact arises from an otherwise unmentioned matter for which the company retained him to provide professional services." (Id. at 8.)

The Cohens argue Jeremy Cohen informed Plaintiff of his "true facts" when he initially reported his claim in March 2024 and then in January, March, and April 2025. (Doc. 26, at 13-15.) He made several assertions, including that the Xytex Lawsuit arose out of his legal work for a client and his investigation into potential fraud. (Id. at 13.) In his initial claim, he contended:

> It is being alleged that I conspired to steal company trade secrets with my wife at the company she worked at and a company that was a client of mine. However, the

15

> real issue is a employees [sic] came to me as an attorney who worked for the company and made an allegation that the CEO was committing fraud.

(Id.)  He also stated his legal services for Xytex were not limited and dated back to 2021, and he outlined several matters he worked on as an attorney for Xytex.  (Doc. 26-1, at 3-7.)  The Cohens argue Plaintiff's cited cases are distinguishable, such as the facts in Elite Integrated Med., because in that case, the insured provided true facts to show it did not actually violate the law that was the basis of the lawsuit.  (Doc. 26, at 20.)  Here, Jeremy Cohen provided facts that add "necessary context to the alleged conduct in the Xytex Lawsuit" by confirming the ambiguous allegations arise out of acts that occurred in the performance of legal services.  (Id.)  The Cohens further contend that the additional true facts Jeremy Cohen provided were not a "post-denial attempt to manufacture coverage," but rather, "contemporaneous notice that the claims arose from his legal services." (Doc. 29, at 9.)  Regarding the alleged inconsistencies in the true facts compared to the Xytex Lawsuit answer, the Cohens argue the detailed factual explanations show the purpose of forwarding the documents was to investigate potential legal claims, and as such, there is no inconsistency "when it is undisputed that Mr. Cohen has been representing Xytex for years and that Ms. Cohen was a senior executive of Xytex." (Id. at 10.) Finally, the Cohens allege Plaintiff did not investigate Jeremy

16

Cohen's representations about his work for Xytex upon the initial submission of his claim and instead, denied coverage and dismissed his explanations. (Id. at 11.)

First, the Court finds Jeremy Cohen's true facts do not consist of evidence that was material to the coverage issues and instead provide mere explanations for his conduct. See Elite Integrated Med., 553 F. Supp. 3d at 1318-19. Jeremy Cohen provided no evidence to Plaintiff regarding the alleged internal investigation he conducted, including details regarding any agreement to perform the work, whether he was paid, or if he billed for the services. (See Doc. 27-1, at 11.) His true facts do not provide Plaintiff with factual support for his claims past his personal account of the truth. There is no showing that, even if he was performing an internal investigation, it was requested or permitted by Xytex such that it would qualify as part of his performance of legal services for the company. It cannot be said that a secret internal investigation, of which the corporate client is seemingly unaware, falls under the scope of professional services performed for the client. The Court notes the Cohens provided billing records of Jeremy Cohens' work for Xytex that were originally sent to Plaintiff as part of its initial investigation. (Doc. 38-4, at 2-33.) The Court finds the billing entries are generally devoid of significant detail, with a majority of entries containing few words and broad language such as "[]

17

email review" billed for 4.0 hours, or an entry regarding "drafting . . . filing, communication[s] with [various entities], finding local counsel" for 17.9 hours. (Id. at 24, 32.) While this shows that Jeremy Cohen completed some work for Xytex, a fact that neither Party disputes, the records do little to explain or define the actions at issue in the Xytex Lawsuit's complaint.

As addressed above, the Xytex Lawsuit does not allege the claims against Jeremy Cohen are related to any legal services he performed, further supporting the conclusion that the allegations are unrelated to the work performed for Xytex in his capacity as its attorney. The true facts provide possible explanations and defenses regarding Jeremy Cohen's conduct, but the claims themselves still allege he had unauthorized access to confidential business documents and worked with Lorin Cohen to recruit an IT employee to access privileged communications between Xytex's CEO and his counsel. The fact remains that the Xytex Lawsuit does not allege these acts took place during Jeremy Cohen's performance of legal services for Xytex.

To the contrary, Xytex states that because he was a Georgia licensed attorney, Jeremy Cohen knew or should have known about the legal prohibitions against the possession and use of protected information. (Doc. 24-2, at 4.) In addition, he knew he should not have access to those documents, and he knew it was wrongful to aid and abet Lorin Cohen and another in violating their Restrictive

18

Covenants. (Id.) These assertions do not show Xytex's claims arose from Jeremy Cohen's legal services for Xytex. Instead, they merely show that he was acting in ways he knew or should have known, based on his legal experience and education, were inappropriate. The Parties do not dispute Jeremy Cohen performed legal services for Xytex at some point, but his true facts fail to show more than an incidental relationship between Xytex's claims of him aiding and abetting his wife and recruiting another defendant to access information for use in a competitive business enterprise, and his overall performance of legal services.

The Court also notes discrepancies between Jeremy Cohen's explanations in his April 2024 answer to the Xytex Lawsuit compared to his August 2025 declaration regarding some of the accessed confidential business documents. (Doc. 24-5, at 6-12; Doc. 26-1, at 5-7.) The Court finds these differences are mostly immaterial to the issue of policy coverage; however, large variations in explanation do raise concern. For example, Jeremy Cohen first stated documents were sent to him so his wife could "access the information outside the office and perform her duties," which was later changed to "assistance (as legal counsel) on a threat by the CEO to withhold bonuses from sale personnel." (Doc 24-5, at 7-8; Doc. 26-1, at 6.) The Court does not seek to determine the truthfulness of either statement but notes that discrepancies such as these may point to an insured attempting to "create coverage

simply by 'reinterpreting' the factual allegations made so as to come within the scope of the insurance contract" or otherwise trying to create coverage through changes in the provided true facts.  Shafe, 653 S.E.2d at 874.

Further, the initial letter from Plaintiff to Jeremy Cohen after he filed a claim in March 2024 shows that an investigation by the insurer took place.  The determination letter analyzing the complaint and background information was sent after Jeremy Cohen provided Plaintiff with requested documentation and the Xytex Lawsuit was available for review.  (Doc. 26-1, at 13-17.) Therefore, it cannot be said that "[r]ather than investigate, ALPS simply denied coverage."  (Doc. 29, at 11.)

Given the above, the Cohens have failed to provide true facts that place the Xytex Lawsuit within the ALPS Policy's coverage. As a result, the Court **GRANTS** Plaintiff's motion for summary judgment, finding ALPS has no duty to defend or indemnify any party with respect to the Xytex Lawsuit and finding in favor of Plaintiff on the Cohens' counterclaims.

## B. The Cohens' Cross Motion for Partial Summary Judgment

Given the Court has granted Plaintiff's motion for summary judgment, Defendants' conflicting cross motion for summary judgment on their counterclaim Counts I and III is **DENIED**.  Jeremy Cohen is not entitled to defense or indemnification by Plaintiff, and his counterclaims fail as a result.

20

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (Doc. 24) is **GRANTED** and the Cohens' cross motion for partial summary judgment (Doc. 26) is **DENIED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiff, **TERMINATE** all pending motions, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 25th day of March, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

21